**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**KEYWELL, L.L.C.,**

          **Plaintiff,**

      -vs-              **11-CV-182-HKS**

**PERKINELMER, INC., and**
**PERKINELMER HEALTH SCIENCES, INC.,**

          **Defendants.**

---

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment. Dkt. #13.

Pending for determination is plaintiff's motion pursuant to Fed. R. Civ. P. 56 for partial summary judgment. Dkt. #25. For the reasons that follow, plaintiff's motion is denied.

## BACKGROUND

The following facts, derived from the pleadings, affidavits, exhibits, and statements of fact submitted pursuant to Rule 56 of the Local Rules of Civil procedure for the Western District of New York (Dkt. ##25-2, 31-1), are undisputed.

Plaintiff Keywell, L.L.C. ("Keywell"), is an aerospace metals and specialty steel recycling company with its principal place of business in Chicago, Illinois, and processing facilities in Frewsburg and Falconer, New York. Defendant PerkinElmer

Health Sciences Inc. ("PerkinElmer Health") is a Massachusetts corporation with its principal place of business in Waltham, MA. PerkinElmer Health provides a wide range of technological services for the business areas of human and environmental health, including scientific analytical instruments, genetic testing and diagnostic tools, imaging equipment, and software.

In February 2008, following a successful demonstration of its "LABWORKS" Laboratory Information Management Software ("LIMS") at plaintiff's processing facility in Frewsburg, defendant's Eastern Region Sales Manager Jerry Lominac sent a price quotation to plaintiff's Information Technology Systems Manager Darrell Beaton for plaintiff's anticipated purchase of the LABWORKS LIMS system for implementation at the Frewsburg plant. *See* Dkt. #31-3, pp. 16-20. Further negotiations resulted in the transmission of at least three revised software package formulations and price quotations (*see id.* at 22- 38), and the record reflects that Mr. Beaton placed the order to purchase the LABWORKS software sometime in early April 2008. *See id.* at 47 (April 9, 2008 email from Sharon Gong to Darrell Beaton).

On or about April 19, 2008, plaintiff received shipment of the LABWORKS LIMS from defendant, accompanied by Invoice No. 5301652932 in the amount of $60,837.50 for the software package and "assist support" for installation and implementation. *Id.* at 51-52. The invoice indicates that the product was purchased on April 16, 2008, and was shipped on April 18, 2008. *Id.* at 51. Printed on the reverse side of the invoice were the "Terms and Conditions of Sale," which included the following "Exclusive Remedies" clause:

> THE REMEDIES PROVIDED HEREIN ARE BUYER'S SOLE AND
> EXCLUSIVE REMEDIES.  SELLER SHALL NOT BE LIABLE FOR ANY
> INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE
> DAMAGES, WHETHER BASED ON CONTRACT, TORT, STRICT
> LIABILITY OR OTHERWISE, ARISING OUT OF THE DESIGN,
> MANUFACTURE, SALE, DELIVERY, INSTALLATION, SERVICE OR
> USE OF THE PRODUCTS.

Dkt. #26-4. On June 6, 2008, plaintiff remitted payment to defendant in the amount stated on Invoice No. 5301652932.  *See* Dkt. #31-3, p. 85.

Meanwhile, Sharon Gong, defendant's Project Manager for implementation of the LABWORKS system at Keywell, arrived at plaintiff's Frewsburg plant on May 21, 2008 for a "kickoff meeting."  She informed Mr. Beaton and other Keywell personnel present at the meeting that the implementation process would take approximately 110 days.  *Id*. at 9-10.  Following the meeting, Mr. Beaton emailed Mr. Lominac to report this timetable, and to request "additional [PerkinElmer] resources so that we go on-line within 6 weeks" in accordance with the "4-6 week implementation" which Keywell was sold.  *Id.* at 42-43.  Mr. Lominac then forwarded the email to Charles Morris, defendant's Global Implementation Manger, and further discussions were had between Mr. Morris, Ms. Lin, and Mr. Beaton to "determine if a more aggressive schedule can be achieved."  *Id*. at 45.

On May 31, 2008, defendant sent plaintiff an invoice in the amount of $7,352.17 for LABWORKS LIMS implementation services and travel expenses (*id.* at 54), which plaintiff paid on July 31, 2008.  *Id.* at 86.  On August 19, 2008 defendant sent plaintiff an invoice in the amount of  $7,736.55 for "tech spec" consulting services and travel expenses (*id.* at 56), which plaintiff paid on August 26, 2008.  *Id*. at 87.  These invoices

both had the same "Terms and Conditions of Sale" printed on the reverse side as those contained in the April 2008 purchase invoice. Based on this documentation, plaintiff paid defendant a total of $75,926.22 for the purchase and implementation of the LABWORKS LIMS.

Plaintiff filed this action on March 4, 2011, alleging original federal jurisdiction pursuant to 28 U.S.C. § 1332 based on complete diversity of citizenship of the parties, and seeking damages in the amount of the invoices paid based on causes of action for breach of contract, breach of express and implied warranties, and unjust enrichment. Dkt. #1. Plaintiff claims that ongoing problems with implementation of the LABWORKS LIMS system required multiple "Help Desk" calls, several upgrades and re-configurations in response to software malfunctions, and a complete uninstall and reinstall of the system in June 2009 – all of which were unsuccessful, ultimately causing plaintiff to abandon the LABWORKS system. *See id.* at ¶¶ 22-27.

Defendant filed its answer on May 11, 2011, asserting several affirmative defenses. Dkt. #8. Following an unsuccessful attempt at early mediation, the court granted plaintiff's motion for leave to amend the complaint to name PerkinElmer Health as the proper defendant. Dkt. #23. Defendant then filed an amended answer, which contained a revised third affirmative defense alleging that "[a]ny claim for consequential damages is barred by the terms of the Agreement." Dkt. #24, ¶ 11.

Plaintiff promptly moved for partial summary judgment to dismiss the third affirmative defense. *See* Dkt. #26. Plaintiff contends that the limitation of consequential damages language in the terms and conditions of sale printed on the

both had the same "Terms and Conditions of Sale" printed on the reverse side as those contained in the April 2008 purchase invoice. Based on this documentation, plaintiff paid defendant a total of $75,926.22 for the purchase and implementation of the LABWORKS LIMS.

Plaintiff filed this action on March 4, 2011, alleging original federal jurisdiction pursuant to 28 U.S.C. § 1332 based on complete diversity of citizenship of the parties, and seeking damages in the amount of the invoices paid based on causes of action for breach of contract, breach of express and implied warranties, and unjust enrichment. Dkt. #1. Plaintiff claims that ongoing problems with implementation of the LABWORKS LIMS system required multiple "Help Desk" calls, several upgrades and re-configurations in response to software malfunctions, and a complete uninstall and reinstall of the system in June 2009 – all of which were unsuccessful, ultimately causing plaintiff to abandon the LABWORKS system. *See id.* at ¶¶ 22-27.

Defendant filed its answer on May 11, 2011, asserting several affirmative defenses. Dkt. #8. Following an unsuccessful attempt at early mediation, the court granted plaintiff's motion for leave to amend the complaint to name PerkinElmer Health as the proper defendant. Dkt. #23. Defendant then filed an amended answer, which contained a revised third affirmative defense alleging that "[a]ny claim for consequential damages is barred by the terms of the Agreement." Dkt. #24, ¶ 11.

Plaintiff promptly moved for partial summary judgment to dismiss the third affirmative defense. *See* Dkt. #26. Plaintiff contends that the limitation of consequential damages language in the terms and conditions of sale printed on the

invoices is not binding because it was not an essential term of the agreement contemplated by the parties at the time the contract was formed.

## DISCUSSION AND ANALYSIS

### I. SUMMARY JUDGMENT

Plaintiff seeks partial summary judgment pursuant to Rule 56, which provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations and citation omitted). Once the movant has done so, the non-moving party may not rest upon the allegations or denials of its pleading but must set forth specific facts that raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996). "In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities, and draw all inferences, against the moving party." *Sista v. CDC Ixis N.A., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (citations omitted).

Plaintiff contends that there are no genuine factual issues to preclude entry of partial summary judgment striking the third affirmative defense from the amended

answer. According to plaintiff, the contract for the purchase and sale of the LABWORKS software system was formed by the parties' conduct, as evidenced by the April 9, 2008 email from Sharon Gong confirming the placement of the order (Dkt. #31-3, p. 47), and by defendant's shipment of conforming goods on April 18, 2008 (*id.* at 51). Plaintiff argues that there was no discussion during the negotiations preceding the purchase regarding limitation of remedies or any of the terms and conditions of sale printed on the invoices, and plaintiff only became aware of those terms when it received the invoice accompanying the delivery of the goods on April 19, 2008, after the formation of the contract.

Defendant counters that the purchase agreement was formed not upon shipment of the goods, but rather, upon plaintiff's acceptance of the goods along with the invoices containing the written terms and conditions of sale, and upon ratification by payment of the invoices without objection.

## II.     ARTICLE 2 OF THE UNIFORM COMMERCIAL CODE

The parties agree that the cause sued upon in this case involves a contract for the purchase of goods, governed by Article 2 of New York's Uniform Commercial Code ("N.Y.U.C.C."). *See, e.g., Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 199-200 (E.D.N.Y. 2010) (software licensing agreement categorized as a "good" governed by Article 2); *Richard A. Rosenblatt & Co., Inc. v. Davidge Data Sys. Corp.*, 743 N.Y.S.2d 471, 472 (App. Div. 1st Dep't 2002) (finding contract for installation of computerized securities trading system, including hardware and software user rights, to be a contract for the sale of goods). Under Article 2:

> [A] contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

N.Y.U.C.C. § 2-201(1). This "statute of frauds" provision is subject to the "merchant's exception" set forth in the immediately following subsection:

> Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

N.Y.U.C.C. § 2-201(2).

Further, under Section 2-207:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>
>> (a) the offer expressly limits acceptance to the terms of the offer;
>>
>> (b) they materially alter it; or
>>
>> (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

N.Y.U.C.C. § 2-207.

Defendant contends that the transaction at issue in this case was a sale of goods pursuant to an agreement between merchants, reached orally and confirmed in writing by the invoices which were sent and received within a reasonable time after the goods were ordered, and which plaintiff paid without any written notice of objection. According to defendant, the terms and conditions of sale printed on the invoices–including the limitation of consequential damages–became part of the contract and are binding on the parties under Sections 2-201(2) and 2-207.

For its part, plaintiff contends that it is not a software "merchant" within the definition of the statute, and the transaction is therefore governed by Sections 2-204(1) ("[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract …") and 2-206(1)(b) ("an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods …"). As indicated above, plaintiff argues that the contract was formed not upon receipt of the written terms and acceptance of the delivery without timely objection, but by the parties' conduct when the order was placed and the conforming goods were shipped–prior to the inclusion of any writing containing terms or conditions not previously negotiated or agreed upon.

As defined in Section 2-104:

(1) "Merchant" means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent

or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

…

(3) "Between merchants" means in any transaction with respect to which both parties are chargeable with knowledge or skill of merchants.

N.Y.U.C.C. § 2-104. The Official Comment to this section explains that the special provisions for merchants appearing in Sections 2-201(2) (dealing with the statute of frauds) and 2-207 (dealing with confirmatory memoranda):

> … rest on normal business practices which are or ought to be typical of and familiar to any person in business. For purposes of these sections almost every person in business would, therefore, be deemed to be a "merchant" under the language "who … by his occupation holds himself out as having knowledge or skill peculiar to the practices … involved in the transaction …" since the practices involved in the transaction are non-specialized business practices such as answering mail.

N.Y.U.C.C. § 2-104, Official Comment 2. By contrast, the implied warranty of merchantability set forth in Section 2-314 is available only "if the seller is a merchant with respect to goods of that kind." N.Y.U.C.C. § 2-314(1). "Obviously this qualification restricts the implied warranty to a much smaller group than everyone who is engaged in business and requires a professional status as to particular kinds of goods." N.Y.U.C.C. § 2-104, Official Comment 2. With regard to the clause "or to whom such knowledge or skill may be attributed by his employment of an agent or broker ...," the Official Comment explains that a person or entity "can come within the definition of merchant if they have regular purchasing departments or business personnel who are familiar with business practices and who are equipped to take any action required." N.Y.U.C.C. § 2-104, Official Comment 3.

New York cases have adopted the liberal application of Section 2-104 recommended by the Official Comment. For example, in *R.F. Cunningham & Co. Inc. v. Driscoll*, 790 N.Y.S.2d 368 (N.Y.City Ct. 2005), the plaintiff was a farm products dealer who entered an oral contract with a grain farmer for the purchase of soybeans. The buyer promptly sent the farmer a written "purchase confirmation" to which the farmer failed to object within 10 days. When the farmer later refused to deliver the soy beans, the dealer sued. The court granted partial summary judgment to the plaintiff dismissing the farmer's statute of fraud defense, finding that the farmer was a merchant under the U.C.C. for statute of frauds purposes because he was "experienced in the selling of his grain products and therefore has the necessary knowledge and skill …." *Id.* at 370. *See also Pecker Iron Works, Inc. v. Sturdy Concrete Co., Inc.*, 410 N.Y.S.2d 251, 254 (1978) (general contractor "not in the business of buying and selling steel" found to be a merchant regarding enforceability of oral contract for the sale of steel, "within the broad language of 2-104(1) & (3)"); *National Microsales Corp. v. Chase Manhattan Bank, N.A.*, 761 F. Supp. 304, 306 (S.D.N.Y. 1991) (bank found to be a merchant regarding enforceability of oral contract for purchase of office equipment based on "familiarity with the goods it purchases and sells").

In this case, while Keywell is clearly not in the business of creating, marketing, and selling sophisticated computer software systems, it is not disputed that Keywell is a multi-state corporation with an information technology department, an Information Technology Systems Manager, and personnel familiar enough with the company's business practices to make an informed decision regarding the purchase of a software system appropriate for Keywell's laboratory information management needs.

Considering these circumstances, and giving the definitions in Section 2-104 the liberal scope recommended by the Official Comments and adopted by the New York courts, Keywell must be deemed to be a "person who … by his occupation holds himself out as having knowledge or skill peculiar to the practices … involved in the transaction …" under Section 2-207(1). Accordingly, the court finds that the agreement governing plaintiff's purchase of the LABWORKS LIMS system was "between merchants" within the meaning of Sections 2-201(2) and 2-207.

Based on the information in the present record, it is also clear to the court that the April 18, 2008 invoice containing the terms and conditions of the sale was sent within a reasonable time of the order and confirmation, as measured from its clearest expression in the April 9, 2008 email from Ms. Gong to Mr. Beaton (Dkt. #31-3, p. 47). This invoice was paid with no written notice of objection to its contents given within ten days after receipt, as were the May 31, 2008 and August 19, 2008 service invoices containing the same terms and conditions. Accordingly, under Section 2-207(2), the limitation of consequential damages set forth in the terms and conditions of sale must be deemed to be "part of the contract unless … they materially alter it …." N.Y.U.C.C. § 2-207(2)(b).

In this regard, the Official Comment to Section 2-207 explains that a term "materially alters" a contract if it "result[s] in surprise or hardship if incorporated without express awareness by the other party …," for example, "a clause negating such standard warranties as that of merchantability or fitness for a particular purpose …." N.Y.U.C.C. § 2–207, Official Comment 4. Examples of terms which involve no element of unreasonable surprise and therefore do not "materially alter" a contract include "a

clause limiting the right of rejection for defects which fall within the customary trade tolerances for acceptance 'with adjustment' or otherwise limiting remedy in a reasonable manner (see §§ 2-718 and 2-719)." N.Y.U.C.C. § 2–207, Official Comment 5.

Under Section 2–719 (referred to in Official Comment 5), "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." N.Y.U.C.C. § 2-207(3). Thus:

> Limitation of consequential damages where a loss is commercial is ordinarily not considered unconscionable under New York law, in accordance with the underlying policy of the U.C.C. that parties to an agreement are "left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect."

*Suzy Phillips Originals, Inc. v. Coville, Inc.*, 939 F. Supp. 1012, 1018 (E.D.N.Y. 1996) (quoting *AT & T v. New York City Human Resources Admin.*, 833 F. Supp. 962, 988 (S.D.N.Y. 1993)), *aff'd*, 125 F.3d 845 (2d Cir. 1997); *see also In re Chateaugay Corp.*, 162 B.R. 949, 960 (Bankr. S.D.N.Y. 1994) ("It is extremely rare for a court to find an unconscionable limitation on consequential damages in a contract between experienced businessmen arising in a commercial setting.") (citing cases).

In this case, the damages sought by plaintiff relate entirely to commercial losses associated with the alleged failure of the LABWORKS LIMS system. Indeed, the amended complaint seeks only to recover the amounts paid on the invoices; it does not specifically seek to recover "any loss resulting from general or particular requirements

and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise …," N.Y.U.C.C. § 2-715(2)(a) (definition of consequential damages), and plaintiff has made no showing to suggest that the inclusion of the terms and conditions printed on the invoices as part of the contract between the parties would somehow result in surprise or hardship, unconscionable limitation of available remedies, or material alteration of the agreement.

Plaintiff cites *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102 (3d Cir. 1992), as a "strikingly similar case" (Dkt. #32, p. 5) in which the court found that the limitation of consequential damages contained in the invoices accompanying the shipment of the goods resulted in material alteration of the purchase agreement because it "would operate to prevent plaintiffs from taking advantage of the remedies otherwise available to them under Pennsylvania law." *Id.* at 1108. However, the court in *In re Chateaugay* noted its specific disagreement with the holding in *Altronics*, citing it as an example of decisions which have ignored the approach suggested in the Uniform Comments (and followed by courts in New York) recognizing the need for flexibility of remedies in the commercial setting, "instead holding as a matter of law that any limitation on the right to recover consequential damages is a material alteration ...." *In re Chateaugay*, 162 B.R. at 956.

Based on this analysis, and resolving all ambiguities and drawing all inferences in favor of the non-moving party, the court finds that plaintiff has failed to demonstrate the absence of a genuine issue of material fact with regard to whether "[a]ny claim for consequential damages is barred by the terms of the Agreement." Accordingly, plaintiff

is not entitled to partial summary judgment striking the third affirmative defense from the amended answer.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for partial summary judgment (Dkt.#25) is DENIED.

**SO ORDERED.**

DATED:    Buffalo, New York
              August 26, 2013

                                          s/ H. Kenneth Schroeder, Jr.
                                          **H. KENNETH SCHROEDER, JR.**
                                            **United States Magistrate Judge**